UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No: 09-11794-RAM
**DOUGLAS H. CANTON**                           Chapter 13
**SSN:XXX-XX-9442**
**RENA CANTON**
**SSN:XXX-XX-2666**

_____ Debtor _____/

## MOTION TO VALUE COLLATERAL IN PLAN, MOTION TO DETERMINE SECURED STATUS AND MOTION TO AVOID LIEN

### IMPORTANT NOTICE TO CREDITORS: THIS IS A MOTION TO VALUE YOUR COLLATERAL, DETERMINE SECURED STATUS AND AVOID LIEN

**This Motion seeks to value collateral described below securing the claims of the creditors listed below.**

**If you have not filed a proof of claim, you have until the later of the claims bar date or 20 calendar days from the date this motion was served on you to file a proof of claim or you will be deemed to have waived the right to payment of any unsecured claim to which you might otherwise be entitled. [See Local Rule 3015-3(A)(4).]**

The debtor files this Motion to Value Collateral in Plan pursuant to 11 U.S.C. §506(a), Bankruptcy Rule 3012,   Local Rule 3015-3 and seeks to value collateral securing the claims of the creditor(s) listed below by indicating in the plan the description and value of the collateral.

| Description of Collateral and Value of Collateral | Secured Creditor | Interest Rate | Plan Payments | Months of Payment | | Total Plan Payments |
|---|---|---|---|---|---|---|
| 3070 SE 4^TH Place, Homestead, FL 33033-5765 Lot 9, Block 29, KEYS GATE NO THREE, according to the plat thereof, as recorded in Plat Book 133, Page 35, of the Public Records of Miami-Dade County, Florida.<br><br>Value of Collateral is $215,000.00 | Home Loan Investment Bank, FSB | 0 % | $0.00 | 1    To    60 | | $0.00 wholly avoid lien |
| | | | | | | |
| | | | | | | |

The debtor further states that:

1. Upon the filing of this motion, the debtor reviewed the docket and claims register and states that:

☐ no claims have been filed with respect to the debt that the collateral listed above secures; or

**X** the following claim has been filed with respect to the debt that the collateral

listed above secures:

> **Claim 8. HOME LOAN INVESTMENT BANK, FSB AS SERVICING AGENT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HOME LOAN MORTGAGE LOAN TRUST 2005-1.**

2.   The debtor :

☐ does not object to the following claims listed as filed in paragraph (1) above; (List)

**X** has, by separately filed document, objected to the following claims:

**NOTICE IS HEREBY GIVEN THAT:**

**1.**   In accordance with the rules of this court, unless an objection is filed with the court and served upon the debtor, the debtor's attorney, and the trustee <u>Nancy N. Herkert</u> at or before the hearing scheduled in this matter, the value of the collateral may be established as the amount as stated in the plan and in this motion without further notice, hearing or order of the court.   Pursuant to Local Rule 3015-3(A)(3), timely raised objections will be heard at the hearing scheduled on the motion.

**2.**   The undersigned acknowledges that this motion and notice of hearing must be served pursuant to Bankruptcy Rule 7004 and Local Rule 3015-3 at least 20 days prior to the hearing date and that a certificate of service must be filed when the motion and notice of hearing are served.

**MEMORANDUM**

1. This is a contested matter under F.R.B.P. 3012 and 9014.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Sections 157 (b)(2)(A), (O) and 1334.

3. On January 31, 2009, Debtor(s) filed a petition under Chapter 13 of the Bankruptcy Code (11 U.S.C.) in the captioned case.

4. The creditor's meeting was held on March 17, 2009 and the confirmation hearing is set for April 14, 2009.

5.   11 U.S.C. Section 506 (a) provides that "[A]n allowed claim of a creditor secured by a lien on property in which the estate has an interest,…is a secured claim to the extent of the value of such creditor's

interest in the estate's interest in such property, …and is an unsecured claim to the extent that the value of such creditor's interest…is less than the amount of such claim."

6. 11 U.S.C. Section 506 (d) further provides that "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void…"

7. The Court is therefore requested to value the estate's interest in property in which this creditor has an interest.    See Bankruptcy Rule 3012.

8. On or about May 24, 2005, the debtor being indebted to Home Investment Bank, F.S. B. in the amount of $60,000.00 executed and delivered a promissory note and a mortgage securing payment of said promissory note.

9.   The mortgage was recorded on June 7, 2005 in Official Records Book 23450, at Pages 3771-3781, of the Public Records of Miami-Dade County, Florida, and mortgaged the following property:

**3070 SE 4TH PL, HOMESTEAD, FL 33033-5765.**

**Lot 9, Block 29, KEYS GATE NO THREE, according to the plat thereof, as recorded in Plat Book 133, at Page 35, of the Public Records of Miami Dade County, Florida.**

(the "Property") then owned by and in possession of the Debtor, a copy of the mortgage being attached hereto and made a part hereof, marked Composite Exhibit "A".

10. Wachovia Mortgage also holds a first priority mortgage on the Property in the amount of $307,014.44 per the proof of claim filed in Debtor's bankruptcy case.

11.   The value of the Property in listed in debtor's schedules at $215,000.00 as per the attached appraisal, marked Composite Exhibit "B".

12.   Home Loan Investment Bank, F.S.B. is a wholly unsecured claim as the amounts of Wachovia Mortgage's secured claims exceeds the value of the Property.

13. The rights of a junior mortgage such as Home Loan Investment Bank, F.S.B. may be modified in a Chapter 13 plan if they are <u>wholly</u> unsecured as it does not qualify as a creditor whose claim is "secured" solely by an interest in property that is the debtors' principal residence within the meaning of 11 U.S.C. Section 1322 (b)(2).    In re Tanner, 2000 WL 966700 (11th Cir. 2000).

14.   A creditor holds a "secured" claim only to the extent of the value of the creditor's interest in collateral.    If there is no value, there is no secured claim.    11 U.S.C. Section 506 (a).

15.   Home Loan Investment Bank, F.S.B.'s claim is not protected by 11 U.S.C. Section 1322 (b)(2)

and the Supreme Court's decision in Nobelman v. American Savings Bank, 508 U.S. 324, 113 S. Ct. 2106

(1993) as it is wholly unsecured.

16. To the extent that the Home Loan Investment Bank, F.S.B.'s lien is not securing an allowed

secured claim, such lien is void.    11 U.S.C. Section 506 (d), In re: Folendore, 862 F.2d 1537 (11th Cir.

1989).

**WHEREFORE**, Debtor moves this Court to:

1. Value the Property at $215,000.00,

2. Determine that Home Loan Investment Bank, F.S.B.'s claim is a wholly unsecured claim as its

interest in the estate's interest in the Property is zero,

3.   Determine that Home Loan Investment Bank, F.S.B.'s allowed claim is a wholly unsecured

claim,

4. Declare Home Loan Investment Bank, F.S.B.'s lien void to the extent that it secures a claim that is

not an allowed secured claim; and

5. Such further relief consistent with this request for relief.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically served to the
Clerk of the Bankruptcy Court; Nancy N. Herkert, Trustee; and by Certified Mail to: Home Loan Investment
Bank, F.S.B., John M. Murphy, Founder and CEO, 1 Home One Home Loan Plaza, Suite 3, Warwick, RI
02886 on this 6th day of April, 2009.

Respectfully submitted,

Jorge L. Suarez
Attorney for Debtor(s)
3735 SW 8th Street, Suite 101
Coral Gables, FL 33134
Tel: (305)445-2944
jorgesuarezlaw@aol.com

/s/Jorge L. Suarez
Jorge L. Suarez Florida Bar No. 0844950

CFN 2005R0585165
OR Bk 23450 Pgs 3771 - 3781 (11pgs)
RECORDED 06/07/2005 15:27:48
MTG DOC TAX 210.00
INTANG TAX 120.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This instrument was prepared by: Robert E. Poirier, VP
Ocean Bank, F.S.B.
One Home Loan Plaza, Suite 3
Warwick, Rhode Island 02886-1765
OCEAN BANK, F.S.B.

When Recorded Mail To:
Ocean Bank, F.S.B.
One Home Loan Plaza, Suite 3
Warwick, Rhode Island 02886-1765

————————————— [Space Above This Line For Recording Data] —————————————

1008603

# MORTGAGE

Loan Number LA1

THIS MORTGAGE is made this 24TH day of MAY, 2005, between the Mortgagor, DOUGLAS H CANTON and RENA CANTON (herein "Borrower"), and the Mortgagee, OCEAN BANK, F.S.B., a corporation organized and existing under the laws of THE UNITED STATES OF AMERICA, whose address is ONE HOME LOAN PLAZA, SUITE 3, WARWICK, RHODE ISLAND 02886-1765 (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $60,000.00; which indebtedness is evidenced by Borrower's note dated MAY 24, 2005 and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on MAY 28, 2035;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of MIAMI-DADE, State of Florida:

SEE ATTACHED SCHEDULE A

which has the address of   3070 SOUTHEAST 4TH PLACE _____ ,   HOMESTEAD _____ ,
                                                              [Street]                                                    [City]
Florida   33033 _____   (herein "Property Address");
              [Zip Code]

FLORIDA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

Form 3810  (page 1 of 5 pages)

Composite Exhibit "A"

Page 3

**In-House Number:  OB-2005050216**

## SCHEDULE A

Lot 9, Block 29, of Keys Gate No. Three, according to the Plat thereof, as recorded in Plat Book 133 at Page 35 of the Public Records of Miami Dade County, Florida.

Pin No. 10-7916-003-1050

First American Title Insurance Company
Daniel A. McMahon, P.C.
500 South Salina Street, Suite 816
Syracuse, New York 13202

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

### NOTICE TO BORROWER

Do not sign this Mortgage if it contains blank spaces. All spaces should be completed before you sign.

Signed, sealed and delivered in the presence of:

_Marisol Ruiz_
Witness please sign and print name

_____ (Seal)
DOUGLAS H CANTON                    -Borrower

Please print your post office address

3070 SE 4th Place

Homestead, FL 33033

_____ (Seal)
RENA CANTON                         -Borrower

_Hector R Casto_
Witness please sign and print name

Please print your post office address

3070 SE 4th Place,

Homestead, FL 33033

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

Please print your post office address

_____

_____

Please print your post office address

_____

_____

STATE OF FLORIDA, MIAMI-DADE                    County ss:

The foregoing instrument was acknowledged before me this   MAY 24, 2005
by DOUGLAS H CANTON and RENA CANTON who is personally known to me or who has produced   driver
licenses     as identification.

_____
Notary Public
Please Print Name   Marisol Ruiz

```
MARISOL RUIZ
MY COMMISSION #DD238147
EXPIRES: AUGUST 04, 2007
Bonded by 1st State Insurance
```

Form 3810  *(page 5 of 5 pages)*

Loan Number

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 24TH day of MAY, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to OCEAN BANK, F.S.B. (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3070 SOUTHEAST 4TH PLACE , HOMESTEAD, FLORIDA 33033 _____

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in_____

_____

_____

(the "Declaration"). The Property is a part of a planned unit development known as_____

KEYS-GATE

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

    **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

    **B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 2 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

    What Lender requires as a condition of this waiver can change during the term of the loan.

    Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

    In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

MULTISTATE PUD RIDER–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      **Form 3150 1/01**

*(page 1 of 2 pages)*



C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 9.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
DOUGLAS H CANTON                 -Borrower

_____ (Seal)
RENA CANTON                      -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

MULTISTATE PUD RIDER–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 1/01
                                                                                (page 2 of 2 pages)

Loan Number

# ADJUSTABLE RATE RIDER
(LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 24TH day of MAY, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to OCEAN BANK, F.S.B. (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3070 SOUTHEAST 4TH PLACE , HOMESTEAD, FLORIDA 33033

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 9.000%. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the 28TH day of MAY, 2007, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN AND THREE-QUARTERS percentage points (7.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)—Single Family—Freddie Mac MODIFIED INSTRUMENT Form 3192 1/01  (page 1 of 3 pages)

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **12.000%** or less than **9.000%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **17.000%** or less than **9.000%**.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 16 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 12 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

OR K 23450 PG 3781
LAST PAGE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
DOUGLAS A CANTON                    -Borrower

_____ (Seal)
RENA CANTON                         -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

Loan Number.

100863

# ADJUSTABLE RATE NOTE

(LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MAY 24 , 2005          HOMESTEAD          , FLORIDA

[Date]                [City]              [State]

3070 SOUTHEAST 4TH PLACE , HOMESTEAD, FLORIDA 33033

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $60,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is OCEAN BANK, F.S.B.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.000%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 28TH day of each month beginning on JUNE 28, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 28, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at ONE HOME LOAN PLAZA, SUITE 3, WARWICK, RHODE ISLAND 02886-1765 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $482.78. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 28TH day of MAY, 2007 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN AND THREE-QUARTERS percentage points (7.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.000% or less than 9.000%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 17.000% or less than 9.000%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

FLORIDA-SECOND LIEN-ADJUSTABLE RATE NOTE (LIBOR Index)-Single Family--Freddie Mac MODIFIED INSTRUMENT  Form 3590 1/01

(page 1 of 3 pages)

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

FLORIDA-SECOND LIEN-ADJUSTABLE RATE NOTE (LIBOR Index)—Single Family—Freddie Mac MODIFIED INSTRUMENT Form 3590 1/01

(page 2 of 3 pages)

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 12 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DOUGLAS H CANTON                                        -Borrower
SSN: 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

_____ (Seal)
RENA CANTON                                              -Borrower
SSN: 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

_____ (Seal)
                                                         -Borrower
SSN:

_____ (Seal)
                                                         -Borrower
SSN:

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
THIS _____ DAY OF _____, _____
OCEAN BANK, F.S.B.

BY:_____

# ADDENDUM TO NOTE

## NOTICE TO BORROWER
DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. THIS ADDENDUM TO THE NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.

THIS ADDENDUM TO NOTE ("Addendum") is made this 24TH day of MAY, 2005 and is incorporated into and shall amend and supplement the promissory note of the same date in the principal amount of SIXTY THOUSAND AND 00/100ths Dollars ("Note") given by the prersons signing below as borrower ("Borrower") to OCEAN BANK, F.S.B. ("Lender") and which Note is secured by a Mortgage or Deed of Trust of the same date ("Security Instrument") covering the property described the Security Instrument ("Property").

A.    The terms used in this Addendum have the same meanings as in the Note.

B.    The terms of the Note are revised as follows:

If I make a prepayment, the Note Holder may require me to pay a prepayment penalty. (For purposes of this Addendum, "Prepayment" shall be defined as the payment of twenty percent (20%) or more of the original Note amount within any twelve (12) month period.) If I make a prepayment during the first thirty-six (36) months from the date of the Note, I may be required to pay a prepayment penalty equal to three percent (3%) of the amount I still owe under the Note immediately prior to my prepayment being received by the Note Holder.

The Note Holder will not charge me a prepayment penalty if I am required to pay immediately the full amounts owed under the Note because I am in default under the terms of the Note or Security Instrument.

I may make a prepayment any time after three (3) years from the date of the Note without being required to pay a prepayment penalty to the Note Holder.

C.    Except as specifically stated, above, the terms of the Note remain unchanged and in full effect.


_____
Witness    Harisol Ruiz

_____
Borrower  DOUGLAS H CANTON


_____
Witness    Hector R Castro

_____
Borrower  RENA CANTON


_____
Borrower


_____
Borrower


Prepayment Addendum to Note 3-01

# MULTI-PURPOSE SUPPLEMENTAL ADDENDUM
# FOR FEDERALLY RELATED TRANSACTIONS

Carlos Insignares (305)388-3398

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 3070 SE 4 Place |
| City Homestead | County Miami-Dade   State FI   Zip Code 33033-5765 |
| Lender Private | |

This Multi-Purpose Supplemental Addendum for Federally Related Transactions was designed to provide the appraiser with a convenient way to comply with the current appraisal standards and requirements of the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of Currency (OCC), The Office of Thrift Supervision (OTS), the Resolution Trust Corporation (RTC), and the Federal Reserve.

**This Multi-Purpose Supplemental Addendum is for use with any appraisal. Only those statements which have been checked by the appraiser apply to the property being appraised.**

☒ **PURPOSE & FUNCTION OF APPRAISAL**

The purpose of the appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender in evaluating the subject property for lending purposes. This is a federally related transaction.

☒ **EXTENT OF APPRAISAL PROCESS**

☒ The appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales within the subject market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The original source is presented first. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

☐ The Reproduction Cost is based on ___N/A___
supplemented by the appraiser's knowledge of the local market.

☒ Physical depreciation is based on the estimated effective age of the subject property. Functional and/or external depreciation, if present, is specifically addressed in the appraisal report or other addenda. In estimating the site value, the appraiser has relied on personal knowledge of the local market. This knowledge is based on prior and/or current analysis of site sales and/or abstraction of site values from sales of improved properties.

☒ The subject property is located in an area of primarily owner-occupied single family residences and the Income Approach is not considered to be meaningful. For this reason, the Income Approach was not used.

☐ The Estimated Market Rent and Gross Rent Multiplier utilized in the Income Approach are based on the appraiser's knowledge of the subject market area. The rental knowledge is based on prior and/or current rental rate surveys of residential properties. The Gross Rent Multiplier is based on prior and/or current analysis of prices and market rates for residential properties.

☐ For income producing properties, actual rents, vacancies and expenses have been reported and analyzed. They have been used to project future rents, vacancies and expenses.

☒ **SUBJECT PROPERTY OFFERING INFORMATION**

According to ___MLS___ the subject property:
☒ has not been offered for sale in the past: ☐ 30 days ☐ 1 year ☒ 3 years.
☐ is currently offered for sale for $ _____ .
☐ was offered for sale within the past: ☐ 30 days ☐ 1 year ☐ 3 years   for $ ___N/A___ .
☐ Offering information was considered in the final reconciliation of value.
☒ Offering information was not considered in the final reconciliation of value.
☐ Offering information was not available. The reasons for unavailability and the steps taken by the appraiser are explained later in this addendum.

☒ **SALES HISTORY OF SUBJECT PROPERTY**

According to ___Public Record/Owner___ the subject property:
☒ Has not transferred ☐ in the past twelve months. ☒ in the past thirty-six months. ☐ in the past 5 years.
☐ Has transferred ☐ in the past twelve months. ☐ in the past thirty-six months. ☐ in the past 5 years.
☐ All prior sales which have occurred in the past _____ are listed below and reconciled to the appraised value, either in the body of the report or in the addenda.

| Date | Sales Price | Document # | Seller | Buyer |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

☒ **FEMA FLOOD HAZARD DATA**

☐ Subject property is not located in a FEMA Special Flood Hazard Area.
☒ Subject property is located in a FEMA Special Flood Hazard Area.

| Zone | FEMA Map/Panel # | Map Date | Name of Community |
|---|---|---|---|
| AE | 12025C0365J | 3/2/1994 | Keys-Gate No 3 |

☐ The community does not participate in the National Flood Insurance Program.
☒ The community does participate in the National Flood Insurance Program.
☒ It is covered by a regular program.
☐ It is covered by an emergency program.

Form MP3A — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## ☐ CURRENT SALES CONTRACT

☒ The subject property is currently not under contract.
☐ The contract and/or escrow instructions were not available for review. The unavailability of the contract is explained later in the addenda section.

☐ The contract and/or escrow instructions were reviewed. The following summarizes the contract:

| Contract Date | Amendment Date | Contract Price | Seller |
|---|---|---|---|
| | | | |

☐ The contract indicated that personal property was not included in the sale.
☐ The contract indicated that personal property was included. It consisted of    N/A
Estimated contributory value is $ _____ .

☒ Personal property was not included in the final value estimate.
☐ Personal property was included in the final value estimate.
☐ The contract indicated no financing concessions or other incentives.
☐ The contract indicated the following concessions or incentives: _____

☒ If concessions or incentives exist, the comparables checked for similar concessions and appropriate adjustments were made, if applicable, so that the final value conclusion is in compliance with the Market Value defined herein.

## ☒ MARKET OVERVIEW      Include an explanation of current market conditions and trends.

6-12 _____ months is considered a reasonable marketing period for the subject property based on   Current trends in the subject's immediate market area.

## ☒ ADDITIONAL CERTIFICATION

The Appraiser certifies and agrees that:

(1) The analyses, opinions and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice ("USPAP"), except that the Departure Provision of the USPAP does not apply.
(2) Their compensation is not contingent upon the reporting of predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.
(3) This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

## ☒ ADDITIONAL (ENVIRONMENTAL) LIMITING CONDITIONS

The value estimated is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions unless otherwise stated in this report. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively unless otherwise stated in this report. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous substances or detrimental environmental conditions on or around the property that would negatively affect its value.

## ☒ ADDITIONAL COMMENTS

This is a summary appraisal report.

## ☒ APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION

Appraiser's Signature _____     Effective Date 01/12/2009 _____     Date Prepared 01/17/2009
Appraiser's Name (print)  Carlos M. Insignares _____     Phone #  (305)388-3356
State  FI _____     ☐ License    ☒ Certification #  St.Cert.Res.REA RD3976     Tax ID #  N/A

## ☐ CO-SIGNING APPRAISER'S CERTIFICATION

☐ The co-signing appraiser has personally inspected the subject property, both inside and out, and has made an exterior inspection of all comparable sales listed in the report. The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser.
☐ The co-signing appraiser has not personally inspected the interior of the subject property and:
  ☐ has not inspected the exterior of the subject property and all comparable sales listed in the report.
  ☐ has inspected the exterior of the subject property and all comparable sales listed in the report.
  ☐ The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report, including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser with the exception of the certification regarding physical inspections. The above describes the level of inspection performed by the co-signing appraiser.
☐ The co-signing appraiser's level of inspection, involvement in the appraisal process and certification are covered elsewhere in the addenda section of this appraisal.

## ☐ CO-SIGNING APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION

Co-Signing
Appraiser's Signature _____     Effective Date  N/A _____     Date Prepared  N/A
Co-Signing Appraiser's Name (print)  N/A _____     Phone #   N/A
State  N/A _____     ☐ License    ☐ Certification #   N/A     Tax ID #   N/A

Form MPA3 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 3070 SE 4 Place |
| | Legal Description | Lot 9 Blk 29 Keys Gate NO 3 PB 133-35 & Int In Common Areas |
| | City | Homestead |
| | County | Miami-Dade |
| | State | Fl |
| | Zip Code | 33033-5765 |
| | Census Tract | 0110.04 |
| | Map Reference | 57-39-16 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ N/A |
| | Date of Sale | N/A |

| CLIENT | | |
|---|---|---|
| | Borrower / Client | N/A |
| | Lender | Private |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 2,036 |
| | Price per Square Foot | $ |
| | Location | Suburban/Avg |
| | Age | 8yrs. |
| | Condition | Good |
| | Total Rooms | 9 |
| | Bedrooms | 4 |
| | Baths | 3 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | Carlos M. Insignares |
| | Date of Appraised Value | 01/12/2009 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 215,000 |

**Subject Photo Page**

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 3070 SE 4 Place | | | |
| City Homestead | County Miami-Dade | State Fl | | Zip Code 33033-5765 |
| Lender Private | | | | |



### Subject Front

3070 SE 4 Place

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,036 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Suburban/Avg |
| View | Rsdntl/Lake Frn |
| Site | 5,597 Sq.Ft. |
| Quality | CBS/Good |
| Age | 8yrs. |



### Subject Rear



### Subject Street

## PHOTOGRAPH ADDENDUM

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3070 SE 4 Place | | | | | |
| City | Homestead | County | Miami-Dade | State | Fl | Zip Code  33033-5765 |
| Lender | Private | | | | | |







## PHOTOGRAPH ADDENDUM

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | N/A | | | | | |
| Property Address | 3070 SE 4 Place | | | | | |
| City | Homestead | County | Miami-Dade | State | Fl | Zip Code | 33033-5765 |
| Lender | Private | | | | | |







## Subject Interior Photo Page

| | | | | |
|---|---|---|---|---|
| Borrower/Client  N/A | | | | |
| Property Address  3070 SE 4 Place | | | | |
| City  Homestead | County  Miami-Dade | State  Fl | Zip Code  33033-5765 | |
| Lender  Private | | | | |



**Subject Interior**

3070 SE 4 Place

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,036 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Suburban/Avg |
| View | Rsdntl/Lake Frn |
| Site | 5,597 Sq.Ft. |
| Quality | CBS/Good |
| Age | 8yrs. |



**Subject Interior**



**Subject Interior**

### Subject Interior Photo Page

| Borrower/Client  N/A | | | |
|---|---|---|---|
| Property Address  3070 SE 4 Place | | | |
| City  Homestead | County  Miami-Dade | State  Fl | Zip Code  33033-5765 |
| Lender  Private | | | |



**Subject Interior**

| | |
|---|---|
| 3070 SE 4 Place | |
| Sales Price | N/A |
| Gross Living Area | 2,036 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Suburban/Avg |
| View | Rsdntl/Lake Frn |
| Site | 5,597 Sq.Ft. |
| Quality | CBS/Good |
| Age | 8yrs. |



**Subject Interior**



**Subject Interior**

## Subject Interior Photo Page

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 3070 SE 4 Place | | | | |
| City | Homestead | County | Miami-Dade | State | Fl | Zip Code | 33033-5765 |
| Lender | Private | | | | |



**Subject Interior**

3070 SE 4 Place
| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,036 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Suburban/Avg |
| View | Rsdntl/Lake Frn |
| Site | 5,597 Sq.Ft. |
| Quality | CBS/Good |
| Age | 8yrs. |



**Subject Interior**



**Subject Interior**

## Subject Interior Photo Page

| Borrower/Client N/A | | | |
|---|---|---|---|
| Property Address 3070 SE 4 Place | | | |
| City Homestead | County Miami-Dade | State Fl | Zip Code 33033-5765 |
| Lender Private | | | |



### Subject Interior

3070 SE 4 Place

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,036 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Suburban/Avg |
| View | Rsdntl/Lake Frn |
| Site | 5,597 Sq.Ft. |
| Quality | CBS/Good |
| Age | 8yrs. |



### Subject Interior



### Subject Interior

## Comparable Photo Page

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 3070 SE 4 Place | | | |
| City Homestead | County Miami-Dade | | State Fl | Zip Code 33033-5765 |
| Lender Private | | | | |



### Comparable 1

3090 SE 4 Place

| | |
|---|---|
| Prox. to Subject | 0.01 miles |
| Sale Price | 220,000 |
| Gross Living Area | 1,970 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Suburban/Avg |
| View | Rsdntl/Lake Frn |
| Site | 5,740 Sq.Ft. |
| Quality | CBS/Good |
| Age | 8yrs. |



### Comparable 2

3110 SE 4 Place

| | |
|---|---|
| Prox. to Subject | 0.02 miles |
| Sale Price | 200,000 |
| Gross Living Area | 1,520 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Suburban/Avg |
| View | Rsdntl/Average |
| Site | 5,705 Sq.Ft. |
| Quality | CBS/Good |
| Age | 7yrs |



### Comparable 3

1567 SE 20 Road

| | |
|---|---|
| Prox. to Subject | 1.08 miles |
| Sale Price | 250,300 |
| Gross Living Area | 1,914 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Suburban/Avg |
| View | Rsdntl/Average |
| Site | 4,600 Sq.Ft. |
| Quality | CBS/Good |
| Age | 4yrs |

AC# 4124164                    **STATE OF FLORIDA**
            DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
                   FLORIDA REAL ESTATE APPRAISAL BD
                                                          SEQ# L08103102876

| DATE | BATCH NUMBER | LICENSE NBR |
|------|--------------|-------------|
| 10/31/2008 | 088107063 | RD3976 |

The CERTIFIED RESIDENTIAL APPRAISER
Named below IS CERTIFIED
Under the provisions of Chapter 475 FS.
Expiration date: NOV 30, 2010

    INSIGNARES, CARLOS MANUEL
    8502 SW 146 COURT
    MIAMI                    FL 33183


        CHARLIE CRIST                            CHARLES W. DRAGO
          GOVERNOR          DISPLAY AS REQUIRED BY LAW        SECRETARY

# Five Star Appraisers
## E&O Program

550 W. Van Buren, Suite 1500 * Chicago, IL  60607
(800)497-4644 * Fax: (866)720-5003

## PROOF OF COVERAGE

Binding Authority:  B0595EL0421902007

1. Name and Address of Insured:

   **Carlos M. Insignares**
   **dba Principal Appraisal Services**
   **8502 SW 146th Court**
   **MIAMI       FL  33183**

2. Insurer:     **Underwriters at Lloyd's**

   Rating:     *AM Best:*  A (Excellent)          *S&P:* A+(Good)

3. Coverage:     Errors and Omissions

4. Policy Number:   07REALPC-01378

5. Limits of Liability:          $1,000,000          Each Claim, including Claims Expenses
                                 $1,000,000          Annual Aggregate, including Claims Expenses

6. Deductible:                   $500               Each Claim, including Claims Expenses

7. Annual Policy Premium:

   | | | |
   |---|---:|---|
   | $ | $920.00 | Gross Premium |
   | $ | $9.55 | FHCFN |
   | $ | $35.00 | Processing Fee |
   | $ | $47.75 | Surplus Lines Tax FL |
   | $ | $.96 | Stamping Fee FL |
   | $ | $1,013.26 | **Total Premium** |

8. Policy Period          04/29/2008  to  04/29/2009
                          12:01 a.m. standard time at the location stated above.

9. Retroactive Date:      04/29/2005

   Definition: Retroactive Date (Prior Acts Coverage) - This is the date from which the Insured warrants that "CONTINUOUS" Professional Liability coverage has existed without interruption. Appraisers obtaining this insurance for the FIRST time or renewing insurance after a lapse in coverage will have a retroactive date the same as the policy inception date. A retroactive date indicates how far back in time this insurance will provide coverage for prior acts. Any claims made for an appraisal done prior to the retroactive date will be excluded under this policy.

10. Based On: 1.00    Appraiser   Carlos M. Insignares

    Coverage is subject in all respects to terms, conditions and limitations of the master policy issued by Underwriters at Lloyds, Policy Number MPREA-1007, unless otherwise specified.

11. Coverage is subject in all respects to the terms, conditions and limitations of the policy issued by Underwriters at Lloyds, unless otherwise specified.

Date of Issuance:   April 30, 2008

**Kevin M. Ottley**

Authorized Representative

## Resume

Carlos M. Insignares
State Certified Residential Appraiser
RD#3976
8502 SW 146 Court
Miami,Fl. 33183
Phone:305-388-3356
E-mail:principalapprais@bellsouth.net

### Experience

Presently working in the field of Real Estate, involved in various forms of
Consultation, Appraisal Economic Research and Market Analysis

| | |
|---|---|
| 04/03-Present | Principal Appraisal Services, Inc.- Owner/Supervisor |
| 08/98-03/03 | Prime Appraisal Group, Inc. - Staff Appraiser |
| 01/90-07/98 | All-Dagum Service, Inc.- Co-Owner |

### Certifications,License & Affiliations

State Certified Residential Real Estate Appraiser #RD-3976
Home Inspector Certification

### Education
#### Related Real Estate Courses & Seminars

| | |
|---|---|
| 1997 Course AB-1 | Residential Real Estate Appraisal Course 1 |
| 1998 Course | Environmental Consideration For The Appraiser |
| 1998 Course | Appraising 2-4 Family Residential Properties |
| 1998 Course | Regression Analysis |
| 1998 Course | Uniform Standards Of Professional Appraisal Practice |
| 1999 Course | Home Inspection |
| 2002 Course AB2/AB2B | Certified Residential Real Estate Appraisal Course 2 |
| 2004 Course | Principal Of Home Inspection (Interior) |
| 2004 Course | Uniform Standards Of Professional Appraisal Practice |
| 2004 Course | Investment Analysis For Appraisers |
| 2006 Course | Techniques of Income Property Appraisal |
| 2006 Course | FHA Handbook 4150.2 |
| 2006 Course | 7 Hour National USPAP Update |
| 2006 Course | 3 Hour Florida Appraisal Law Update |
| 2007-FHA | FHA Approved |
| 2008 Course | 17-Hour Advanced Residential Applications |
| 2008 Course | 7 Hour National USPAP Update |
| 2008 Course | 3 Hour Florida Appraisal Law Update |
| 2008 Course | 3 Hour Florida Supervisor/Trainee Roles & Relationships |

#### Colleges

| | |
|---|---|
| Miami-Dade Community College | 1989-1991 |
| International Fine Arts College | 1991-1993 |

**Appraisals:** Single Family Residence, Condominiums, Small Income Property &
Vacant Land
**Consulting:** Economic Research And Market Analysis pertaining to residential properties

| Borrower | N/A | | | | File No. 09-008 |
| Property Address | 3070 SE 4 Place | | | | |
| City | Homestead | | County Miami-Dade | State Fl | Zip Code 33033-5765 |
| Lender/Client | Private | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is one of the following types:

☐ Self Contained (A written report prepared under Standards Rule 2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ Summary (A written report prepared under Standards Rule 2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted Use (A written report prepared under Standards Rule 2-2(c) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

· The statements of fact contained in this report are true and correct.
· The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
· I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.
· I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
· My engagement in this assignment was not contingent upon developing or reporting predetermined results.
· My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
· My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
· I have (or have not) made a personal inspection of the property that is the subject of this report.
· No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report.)

## Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any State mandated requirements:

Single Family homes are typically not used as income producing properties therefore limited rental information is available. Due to lack of rental information deriving at an accurate GRM is not possible. The income approach is not applicable

**APPRAISER:**

Signature: Carlos M. Insignares
Name: Carlos M. Insignares
Date Signed: 01/17/2009
State Certification #: St.Cert.Res.REA RD3976
or State License #: N/A
State: Fl
Expiration Date of Certification or License: 11/30/2010

Effective Date of Appraisal: 01/12/2009

**SUPERVISORY APPRAISER (only if required):**

Signature: N/A
Name: N/A
Date Signed: N/A
State Certification #: N/A
or State License #: N/A
State: N/A
Expiration Date of Certification or License:
Supervisory Appraiser inspection of Subject Property:
☐ Did Not    ☐ Exterior-only from street    ☐ Interior and Exterior

Carlos Insignares (305)388-3398

# FIRREA / USPAP ADDENDUM

File No. 09-008

| | |
|---|---|
| Borrower | N/A |
| Property Address | 3070 SE 4 Place |
| City | Homestead County Miami-Dade State Fl Zip Code 33033-5765 |
| Lender/Client | Private |

## Purpose
The purpose of this appraisal report is to estimate the most probable price of the subject, requisite to the described definition of value, for the purpose of assisting the client/lender in supporting the collateral portion of said property.

## Scope of Work
The scope of the appraisal is described in the Multipurpose Supplemental Addendum, attached and made part of this report.

## Intended Use / Intended User
Intended Use:     The intended use of this appraisal is for lending purposes only.

Intended User(s):  The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

## History of Property
Current listing information:  Active Per MLS. MLS #M1281007: $279,000 price change occuring 12/05/2008 from $299,121. Any sales history is descibed in the body of the appraisal report. It is described in the Multipurpose Supplemental Addendum attached to this report.

Prior sale:  All prior sales & transfers have been noted on URAR & Multipurpose forms of this Appraisal Report.

## Exposure Time / Marketing Time
The market time is listed in the appraisal report and is refelective of market trends, supply & demand, property type, condition and price range.

## Personal (non-realty) Transfers
Personal non-realty items if any have been described in the Multipurpose Supplemental Addendum attached.

## Additional Comments
This appraisal report is subject to all attached addends, including limiting conditions form 1004b(03/05), USPAP identification, Multipurpose Supplemental Addendum, and any additional comment addenda. All attachments such as Qualifications, building sketches, maps, picture pages, report forms are part of the appraisal report. Removal or alterations of any of the attachments can only be made by signing appraiser. If removal or alternations of any portion of this report is made by anyone other than the signing appraiser the report will be invalid.

## Certification Supplement
1. This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or an approval of a loan.
2. My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.

This report is subject to all attached addendums. This report is not valid without all attached addenda.

| | |
|---|---|
| Appraiser:  Carlos M. Insignares | Supervisory Appraiser:  N/A |
| Signed Date:  01/17/2009 | Signed Date:  N/A |
| Certification or License #:  St.Cert.Res.REA RD3976 | Certification or License #:  N/A |
| Certification or License State:  Fl   Expires:  11/30/2010 | Certification or License State:  N/A   Expires: |
| Effective Date of Appraisal:  01/12/2009 | Inspection of Subject:  ☐ Did Not  ☐ Exterior Only  ☐ Interior and Exterior |

Form FUA_LG — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE